UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JOHN MOSHER,

                                    Plaintiff,

         - against -                                    **OPINION & ORDER**

LANA VEYDA, PATRICIA ELAM,                              No. 22-CV-9632 (CS)
KEITH ELAM, CHRISTOPHER MARTIN
a/k/a DJ PREMIER, and ESTATE OF
KEITH ELAM,

                                    Defendants.
-------------------------------------------------------------x

<u>Appearances</u>:

Emmanuel Coffy
Coffylaw, LLC
Maplewood, New Jersey
*Counsel for Plaintiff*

Kristin Grant
Grant Attorneys at Law PLLC
New York, New York
*Counsel for Defendants Veyda, Elam,*
*Elam & Estate of Keith Elam*

<u>Seibel, J.</u>

        Before the Court is the motion of Lana Veyda, Patricia Elam, Keith C. Elam and the

Estate of Keith Edward Elam (collectively, the "Defendants") to dismiss Plaintiff's Third

Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and

12(b)(7).  (ECF No. 50.)  For the reasons set forth below, Defendants' motion is GRANTED.

I.    **BACKGROUND**

For purposes of the motion to dismiss for failure to state a claim, the Court accepts as true the facts, but not the conclusions, alleged by Plaintiff John Mosher in the Third Amended Complaint.  (*See* ECF No. 49 ("TAC").)

A.    **Facts**

Sometime in 2001, Plaintiff and Keith Elam, who was also known as "Guru," formed an enterprise to compose, record, publish and perform original music.  (TAC ¶ 8.)  Guru is also known as Gangstarr, a persona that he created when he came to New York City in the mid-to-late 1980s to pursue a career as a rap artist.  (*Id.* ¶ 9.)  Working as Gangstarr, Guru signed an independent label deal with "wild pitch records," adding Defendant Christopher Martin, known as "DJ Premier," as his DJ.[1]  (*Id.*)  Together, DJ Premier and Guru wrote, composed and produced nearly all of Gangstarr's songs and albums, which Guru would perform.  (*Id.*)  There were a few exceptions:  the album "One of the Best Yet" that Plaintiff recorded, produced and composed, with Guru contributing lyrics; the album "The Ownerz" produced by Plaintiff, who also co-wrote the lyrics and music; and the song "Battle," which Plaintiff co-produced and co-wrote and which is on the soundtrack for the movie 8 Mile.  (*Id.*).

In addition to Gangstarr, Guru worked on a side venture called Jazzmatazz, which did not involve DJ Premier.  (*Id.* ¶ 10.)  As part of Jazzmatazz, Guru released four albums:  three written, composed and produced by Guru, and one composed, produced and co-written by Plaintiff, who also performed as an artist on the album and was Guru's touring and business partner for that venture.  (*Id.* ¶¶ 10-11.)  Guru and Plaintiff recorded and performed as 7Grand,

---

[1] While the TAC names Martin as a defendant, Plaintiff has not requested a summons for him, and the time to serve him, *see* Fed. R. Civ. P. 4(m), has passed.

made many recordings together, and released five albums as partners. (*Id.* ¶¶ 12-13.) Their business continued until Guru died on April 19, 2010. (*Id.* ¶ 8.)

Guru's Estate thereafter commenced litigation in the Surrogate's Court of the State of New York, County of Rockland, seeking recovery of certain intellectual property that Plaintiff allegedly possessed. (*Id.* ¶ 14.) On March 12, 2014, the Surrogate's Court entered judgment, ordering Plaintiff to pay $169,850.36 to the Estate, among other things. (ECF No. 29-1 ("Surrogate's Decree") at 6; *see* TAC ¶ 15.)[2] The Surrogate also held that Plaintiff was not an owner of, nor held any interest in, "any writings, drawings, designs, lyrics or notes created by Keith Elam and/or any rights thereto" or the recordings embodying Guru's voice or image. (Surrogate's Decree at 2-3; *see* TAC ¶ 16.) Likewise, the Surrogate determined that neither Guru nor any of the entities that he controlled ever transferred or gave Plaintiff trademarks for the "GangStarr," "Gang Starr," "Jazzmatazz," or "Guru's Jazzmatazz" names or logos, and that Plaintiff had no interest in those marks. (Surrogate's Decree at 4-5.) The court permanently restrained and enjoined Plaintiff from "any involvement with . . . utilizing, licensing or conveying to any entity or person, except the Estate of Keith Elam, the 'Gangstarr' and/or 'Gang Starr' name(s), logo(s) and/or trademark(s) and/or any rights thereto." (Surrogate's Decree at 3.) It did the same with respect to the "Jazzmatazz" and "Guru's Jazzmatazz" names, logos, and trademarks. (*Id.*) In his decision, the Surrogate, who had presided over a six-day trial, noted his

---

[2] The TAC refers to numerous exhibits that Plaintiff describes as having been attached to the "1st Compl." (*See* TAC ¶¶ 15, 17, 19, 28, 33.) No documents were attached to the original Complaint, (ECF No. 4), but exhibits were attached to the second amended complaint, (ECF No. 29 ("SAC")). It is apparent that counsel intended to refer to the exhibits attached to the SAC, and in any event they are incorporated in and integral to the TAC, *see United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (court in deciding motion to dismiss may consider documents attached to, incorporated in or integral to complaint), so I consider them in connection with this motion.

"serious concerns with the apparent persistent, pervasive, material and intentional misrepresentations by, and the resulting lack of credibility of [Plaintiff]."  (ECF No. 51-2 at 2.)[3]

Plaintiff appealed the Surrogate's Court's judgment, (TAC ¶ 17), and on June 1, 2016, the Appellate Division, Second Department issued a Decision and Order that modified the Surrogate's Decree and affirmed it as modified, (*see* ECF No. 29-2 ("Appellate Decision") at 1). Specifically, the Appellate Division held that the Surrogate's credibility and factual determinations with respect to the estate's ownership interest in certain corporations and trademarks (and Plaintiff's alleged wrongful conversion of certain funds that belonged to the Estate) were supported by the record, and it did not disturb those determinations.  (Appellate Decision at 2.)  But the Appellate Division also held that the Surrogate's determinations that Plaintiff "held no interest in any writings, drawings, designs, lyrics, or notes created by [Guru] and/or any recordings embodying [Guru's] voice and/or image" (and that Plaintiff improperly received funds from Guru's life insurance policy and retirement fund) were not supported by the record.  (*Id.*)  The Appellate Division thus modified the Surrogate's Decree by deleting certain paragraphs and by reducing the total amount that Plaintiff owed to the estate to $114,162.36.  (*Id.* at 1; *see* ECF No. 51-2 at 5-11 (reflecting portions of Surrogate's Decree that Appellate Division modified).)

Plaintiff alleges that while the Surrogate's Court proceeding remained pending, and continuing through the date of this action, Defendants have received and accepted royalties in

---

[3] I may consider this document, which is a public record, not for its truth but for the fact that it was said.  *See Videri, Inc. v. ONAWHIM (OAW) Inc.*, No. 23-CV-2535, 2024 WL 4027980, at *7 (S.D.N.Y. Sept. 3, 2024); *Doe v. State Univ. of N.Y. Purchase Coll.*, 617 F. Supp. 3d 195, 201 n.3 (S.D.N.Y. 2022); *Yany's Garden LLC v. City of N.Y.*, No. 18-CV-2813, 2020 WL 224701, at *3 (E.D.N.Y. Jan. 15, 2020).  Citations to ECF No. 51-2 use the pagination generated by the Court's Electronic Case Filing ("ECF") system.

connection with activities conducted by Guru and Plaintiff.  (TAC ¶ 19.)  Plaintiff contends that

these royalties are derived from specific copyrights, (*id.* (citing ECF No. 29-5)),[4] but Plaintiff

does not include any details about these royalties except his conclusion that he was "entitled to

receive" them, (*see id.* ¶ 20).  Plaintiff apparently – and erroneously – construes the Appellate

Division's finding that the Estate had not proven that Plaintiff "held no interest in any writings,

drawings, designs, lyrics, or notes created by [Guru] and/or any recordings embodying [Guru's]

voice and/or image" as a finding that Plaintiff did in fact hold such an interest, and infers that he

is therefore entitled to "income and royalties arising therefrom."  (*Id.* ¶ 21.)  He asserts that

Defendants have wrongfully profited from the sale of his intellectual property – including the

licensing or sale of masters and copyrights that were lawfully transferred to him – and that

Defendants have not credited Plaintiff in any way for their use of his work, nor has he received

any royalties or credit from his work in DJ Premier's productions.  (*See id.* ¶¶ 28-33.)

---

[4] The list of copyrights to which Plaintiff refers is in a document captioned "Exhibit A – Trustee's Motion for Authority to Conduct Exam[i]nations Under Fed. R. Civ. P. 2004."  (ECF No. 29-5.)  This document (which erroneously refers to Fed. R. Civ. P. 2004 rather than Fed. R. Bankr. Proc. 2004) is apparently taken from a motion in Plaintiff's bankruptcy case in which the trustee seemingly was trying to determine if Plaintiff had assets in the form of an interest in various copyrights.  Plaintiff asserts that during his bankruptcy, Defendants Patricia Elam and the Estate took the position that Plaintiff owned those copyrights, but the document to which he cites, (TAC ¶ 34; *see* ECF No. 29-3), says no such thing; rather it is his own amended schedule of property in which he claims an interest in various Gangstarr and Jazzmatazz copyrights.  Elsewhere in the TAC, Plaintiff asserts that he holds a registered copyright only in one work that bears Registration No. SR 713-381 (TAC at 1), which apparently refers to the Gangstarr work "Life After Death," although he later refers to Registration No. "SR 713-" and a work called "Life Fter Death," (*id.* ¶ 37).  Life After Death is not one of the works listed in ECF No. 29-5.  In any event, the U.S. Copyright Office's Copyright Public Records System shows that the claimant for "Gangstarr Life After Death," Registration No. 713-381, is 7 Grand Records.  *See* https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?Search_Arg=Gangstarr+Life+After+Death&Search_Code=TALL&PID=81y ieCjBwKSojs0Y3kyye0TGCQ3r1TV&SEQ=20241116165340&CNT=25&HIST=1 (last visited Dec. 2, 2024).  A document on which Plaintiff relies likewise shows that 7 Grand Records, not Plaintiff, is the registered claimant of the Life After Death copyright.  (ECF No. 29-6 at 1.)

B.    **Procedural History**

Plaintiff filed his initial complaint on November 11, 2022, (ECF No. 1),[5] and an amended

complaint on March 14, 2023, (ECF No. 12).  I thereafter granted Defendants' request for

substitution of counsel and their subsequent request for an extension of time to respond to the

first amended complaint.  (*See* ECF Nos. 18, 21, 22.)  On July 24, 2023, Defendants filed a pre-

motion letter in anticipation of a motion to dismiss and a motion for sanctions.  (ECF No. 23.)

At the pre-motion conference on August 29, 2023, I granted Plaintiff leave to amend the

complaint a second time and set a briefing schedule.  (*See* Minute Entry dated Aug. 29, 2023.)

On September 27, 2023, Plaintiff filed his second amended complaint, (ECF No. 29), but before

briefing was completed, Plaintiff's then-counsel moved to withdraw, (ECF Nos. 32, 33, 37, 38.)

At a show cause hearing on November 17, 2023, I granted Plaintiff's counsel's application to be

relieved and denied Defendants' motion to dismiss without prejudice to renewal.  (*See* Minute

Entry dated Nov. 17, 2023.)  After Plaintiff retained new counsel, I held a status conference on

January 17, 2024, at which I granted Plaintiff leave to file a Third Amended Complaint and set a

briefing schedule for the motion to dismiss.  (*See* Minute Entry dated Jan. 17, 2024.)  On March

13, 2024, Plaintiff filed the TAC, (ECF No. 49), which is the operative complaint, asserting

claims for copyright infringement, (TAC ¶¶ 36-46), declaratory judgment, (*id.* ¶¶ 47-49),

trademark infringement and false designation of origin, (*id.* ¶¶ 50-56), unfair competition, (*id.* ¶¶

57-58), and conversion, (*id.* ¶¶ 59-61).  The copyrights in which he claims an interest are the

registered copyright in the Gangstarr work Life After Death and "a number of common law

copyrighted works" that he does not identify.  (*Id.* ¶¶ 37, 39.)  The trademark in which he claims

---

[5] Plaintiff attempted to file the original complaint on that date, but the filing was rejected
by the Clerk of Court for filing deficiencies.  (*See* ECF No. 1.)  He successfully filed on
December 23, 2022.  (ECF No. 4.)

an interest is the expired registered trademark for the Gang Starr logo, which he alleges he continues to use.  (*Id.* ¶¶ 50-51.)  The instant motion followed.

## II.    <u>LEGAL STANDARDS</u>

### A.    <u>Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint."  *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated and superseded on other grounds on reh'g en banc*, 585 F.3d 559 (2d Cir. 2009).[6]  "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Id.*; *see Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  "When a defendant moves to dismiss pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction and also moves to dismiss on other grounds, the Court usually must consider the Rule 12(b)(1) motion first."  *Al-Ahmed v. Twitter, Inc.*, 553 F. Supp. 3d 118, 123 (S.D.N.Y. 2021) (citing *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674 (2d Cir. 1990)).  "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd on other grounds*, 561 U.S. 247 (2010).  Further, in making its determination on jurisdiction, "a district court . . . may refer to evidence outside the pleadings."  *Makarova*, 201 F.3d at 113; *see Arar*, 532 F.3d at 168.

---

[6] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

B.      Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While Rule 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

When deciding a motion to dismiss under Rule 12(b)(6):

a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in

the complaint.  Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint.  For a document to be considered integral to the complaint, the plaintiff must rely on the terms and effect of a document in drafting the complaint[;] mere notice or possession is not enough.  And even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document, and it must be clear that there exist no material disputed issues of fact regarding the relevance of the document.

*United States of America ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021); *see Solano v. New York*, No. 20-CV-1378, 2021 WL 4134793, at *3 (N.D.N.Y. Sept. 10, 2021); *170 Mercer LLC v. Rialto Cap. Advisors, LLC*, No. 20-CV-2496, 2021 WL 1163649, at *2 (S.D.N.Y. Mar. 25, 2021).  A court may also consider "matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## III.    DISCUSSION

### A.    Subject Matter Jurisdiction Over Lanham Act Claims

With respect to his trademark claims, Plaintiff alleges trademark infringement under 15 U.S.C. § 1114, or Section 32 of the Lanham Act, and false designation of origin under 15 U.S.C. § 1125(a), or Section 43(a) of the Lanham Act.  (TAC ¶¶ 50-56.)  At the threshold, Defendants argue that Plaintiff's federal trademark claims must be dismissed for lack of subject matter jurisdiction based on the substantiality doctrine.  (*See* ECF No. 51 ("Ds' Mem.") at 12-14.) "Under the substantiality doctrine, federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit."  *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, No. 20-CV-6158, 2024 WL 4263205, at *5 (S.D.N.Y. Sept. 23, 2024).  "The doctrine is understood to have jurisdictional implications on the theory that a claim can be so meritless, it does not present a federal question for a court to consider."  *Id.*; *see Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220,

224 (2d Cir. 2004); *Pot Luck, L.L.C. v. Freeman*, No. 06-CV-10195, 2009 WL 693611, at *2

(S.D.N.Y. Mar. 10, 2009). "A claim is not insubstantial merely because it relies upon a tenuous

legal theory or is otherwise likely to fail" but rather "claims are deemed insubstantial only if

prior decisions inescapably render the claims frivolous." *Adams v. Suozzi*, 433 F.3d 220, 225 (2d

Cir. 2005).

The Court cannot say that Plaintiff's claims for trademark infringement and false

designation of origin under the Lanham Act[7] – which, as discussed below, fail to state a claim on

which relief can be granted – sink to the level of "absolutely devoid of merit" or "inescapably . . .

frivolous." Defendants contend that the claims meet that standard based on the Surrogate's

Court and Appellate Division decisions that rejected Plaintiff's claims to ownership of or interest

in the "Gangstarr" and "Gang Starr" logo(s) and trademarks, and permanently enjoined his use of

that trademark. (Ds' Mem. at 13-14.) I am not persuaded. The existence of a prior decision that

has preclusive effect is a fairly common reason why claims are dismissed, but that is because

such claims fail to state a claim on which relief can be granted, not because the applicability of a

doctrine such as *res judicata* or collateral estoppel deprives the court of subject-matter

jurisdiction when the claim otherwise meets the requirements of 28 U.S.C. §§ 1331 or 1332.

Plaintiff alleges ownership of a trademark, (TAC ¶¶ 50-51), and the existence of state

court decisions undermining that allegation does not transform his claims from meritless to "so

insubstantial, implausible, foreclosed by prior decisions of the [Supreme] Court, or otherwise

completely devoid of merit as not to involve a federal controversy," *Steel Co. v. Citizens for a

Better Env't*, 523 U.S. 83, 89 (1998); *see Adams*, 433 F.3d at 225 ("A claim is not insubstantial

---

[7] Plaintiff also asserts federal question jurisdiction for his copyright infringement claims
under the Copyright Act, but Defendants challenge only the federal trademark claims under Rule
12(b)(1). (*See* ECF No. 55 ("Ds' Reply") at 2.)

merely because it relies upon a tenuous legal theory or is otherwise likely to fail."); *cf. Belcher v. Wells Fargo Bank NA*, 377 F. App'x 59, 60 (2d Cir. 2010) (summary order) (dismissing "fantastical claims" for failing to meet substantiality doctrine where plaintiff did not assert a single federal claim to support federal question jurisdiction); *Pot Luck*, 2009 WL 693611, at *3-4 (dismissing trademark infringement claim under substantiality doctrine where plaintiff did not allege ownership of protectible mark and complaint's allegations were devoid of merit under directly applicable Supreme Court precedent).  Thus, I deny Defendants' motion to dismiss the trademark claims for lack of subject matter jurisdiction.

  **B.** <u>**Failure to State a Claim**</u>

    **1.** **Trademark Infringement and False Designation of Origin**

  Defendants alternatively move to dismiss Plaintiff's trademark infringement and false designation of origin claims under Rule 12(b)(6) for failure to state a claim.  (Ds' Mem. at 17-19; ECF No. 55 ("Ds' Reply") at 4-5.)  "The *prima facie* case required for [trademark infringement under 15 U.S.C. § 1114(1) and for false designation of origin under 15 U.S.C. § 1125(a)] is the same."  *OffWhite Prods., LLC v. Off-White LLC*, 480 F. Supp. 3d 558, 563 (S.D.N.Y. 2020).  "For each, the [TAC] must allege sufficient facts to establish, first, that the plaintiff's mark is entitled to protection, and second, that the defendant[s'] use of [their] mark is likely to cause consumers confusion as to the origin or sponsorship of [defendants'] goods."  *Id.*; *see Camelot SI, LLC v. ThreeSixty Brands Grp. LLC*, 632 F. Supp. 3d 471, 480 (S.D.N.Y. 2022) ("To state a claim under the Lanham Act for trademark infringement, unfair competition, and false designation of origin, a plaintiff must establish that: (1) [plaintiff] owns a valid mark entitled to protection under the Lanham Act; (2) defendant used the protected mark in commerce, without plaintiff's consent; and (3) defendant's use of that mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods.").

While "a certificate of registration with the [United States Patent and Trademark Office] is prima facie evidence that the mark is registered and valid (*i.e.*, protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce," that presumption "evaporates" where a registration of a trademark is cancelled. *Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, No. 23-947, 2024 WL 2720235, at *2 (2d Cir. May 28, 2024). An unregistered trademark may still support an infringement claim but the "unregistered trademark does not enjoy presumptions of validity or of the owner's ownership of the mark." *Videri Inc. v. ONAWHIM (OAW) Inc.*, No. 23-CV-2535, 2024 WL 4027980, at *9 (S.D.N.Y. Sept. 3, 2024). In other words, "trademark rights attach based upon use of the mark in commerce and registration provides no additional substantive rights against infringement beyond acquired common law rights. . . . [R]egistrations merely offer evidence of ownership, and that showing need not be dispositive of the matter if contrary proof is available." *Broecker v. Widows Sons Grand Chapter the King's Guard Inc.*, No. 21-CV-6309, 2021 WL 5309716, at *7 (W.D.N.Y. Nov. 15, 2021).

Plaintiff alleges that from 2005 to 2019, he was the registered owner of the trademark for the "GANG STARR" logo (U.S. Registration No. 2,994,404), which was used in connection with music and video recordings. (TAC ¶ 50; *see* ECF No. 29-7.) He concedes that the registration expired in 2019, (TAC ¶ 51; *see* https://tsdr.uspto.gov/#caseNumber=2,994,404&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last visited Dec. 2, 2024) (stating registration for mark was cancelled on April 30, 2019)),[8] but contends that he continued to use the trademark

_____

[8] The Court may take judicial notice of public records such as federal trademark registrations but only "for the limited purpose of noting what the documents state, rather than to prove the truth of their contents." *Videri, Inc.*, 2024 WL 4027980, at *7.

beyond the expiration of its registration and thereby maintained his common law protections. (TAC ¶ 51.)

Defendants argue that the Plaintiff cannot assert any ownership interest in the "Gang Starr" trademark because the Surrogate's Court and Appellate Division have already decided that he lacks such an interest. (*See* Ds' Mem. at 17-18.) Plaintiff ignores this argument in his opposition. (*See* P's Opp. at 9-10.) I see no reason why Plaintiff's claims would not be barred by *res judicata* and collateral estoppel, given the clear findings that: 1) "neither [Guru], nor entities he owned or controlled . . . ever transferred or gave to Mosher trademarks to the 'GangStarr' and/or 'Gang Starr' name(s) and/or logo(s); 2) Plaintiff "has no interest in, or rights to such name(s), logo(s) and/or trademark(s); and 3) Plaintiff "is enjoined from any involvement with or, directly or indirectly, utilizing . . . the 'Gangstarr' and/or 'Gang Starr' name(s), logo(s) and/or trademark(s) and/or any rights thereto." (ECF No. 51-2 at 7-9.) *See Mahindra & Mahindra Ltd. v. FCA US LLC*, 503 F. Supp. 3d 542, 552-55 (E.D. Mich. 2020) (*res judicata* barred trademark infringement claims); *Fischer v. Brushy Mountain Bee Farm, Inc.*, No. 17-CV-10094, 2019 WL 935957, at *8-10 (S.D.N.Y. Feb. 26, 2019) (same), *report and recommendation adopted*, 2023 WL 8603027 (S.D.N.Y. Dec. 12, 2023); *Manchanda v. Google*, No. 16-CV-3350, 2016 WL 6806250, at *7-8 (S.D.N.Y. Nov. 16, 2016) (collateral estoppel barred trademark infringement claims to the extent duplicative of issues litigated and decided in prior state court proceedings); *see also Broecker*, 2021 WL 5309716, at *8-9 (addressing doctrines of *res judicata* and collateral estoppel with respect to trademark infringement claims).

Even if Plaintiff had adequately pleaded ownership and validity of the "GANG STARR" trademark, he has not adequately pleaded, or even addressed, the remaining requirements of a trademark infringement claim: whether Defendants are using the mark without permission and

whether such use is likely to cause confusion as to origin or sponsorship.  The TAC pleads no

facts regarding Defendants' purported use of the "Gang Starr" mark or similar marks.  Rather, it

contains only a single conclusory statement that Defendants "have been using a mark identical or

confusingly similar to GANG STARR in connection with the same goods/services . . . which is

likely to cause confusion, mistake, or deception among consumers, contrary to 15 U.S.C. §

1114(1) and § 1125(a)."  (TAC ¶ 52.)[9]  This is the fact-free "formulaic recitation of the elements

of a cause of action" condemned by *Twombly.*  550 U.S. at 555.  Plaintiff's mere assertion of

trademark infringement absent any facts regarding the nature of the infringement fails to provide

Defendants with fair notice of the claims.  *Rodriguez v. Redbubble, Inc.*, No. 21-CV-2973, 2023

WL 6294180, at *4 (S.D.N.Y. Sept. 27, 2023); *see OffWhite*, 480 F. Supp. 3d at 566 (dismissing

Lanham Act claims because the amended complaint's "sparse factual allegations fail[ed] to

plausibly allege the foundational element of consumer confusion").  Put another way, "Plaintiff

pleads no factual content that could lead me to draw a reasonable inference that Defendants have

used Plaintiff's mark in commerce in a way that is likely to cause confusion," and instead

"pleads only threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements."  *Rodriguez*, 2023 WL 6294180, at *4; *see Down to Earth Organics, LLC

v. Efron*, No. 22-CV-6218, 2024 WL 1376532, at *9 (S.D.N.Y. Mar. 31, 2024) (conclusory

allegations about likelihood of confusion could not plausibly support claims for trademark

infringement and false designation of origin).  Thus, the TAC's "bare-bones allegations, which

Plaintiff fails to even elaborate on in [his] Opposition, are insufficient to plausibly state a claim

that Defendants have infringed on [his purported] Marks."  *Down to Earth Organics*, 2024 WL

---

[9] Plaintiff repeats similar conclusory statements in his opposition, simply quoting the
legal standards for a trademark infringement claim, without reference to any facts that might
render those conclusions plausible.  (*See* P's Opp. at 9-10.)

1376532, at *7.  Accordingly, Plaintiff's trademark infringement and false designation of origin claims must be dismissed.

### 2.    Copyright Infringement Claims

"Under the Copyright Act of 1976, as amended, copyright protection attaches to 'original works of authorship' – prominent among them, literary, musical, and dramatic works – fixed in any tangible medium of expression.'"  *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 300 (2019) (quoting 17 U.S.C. § 102(a)).  Authors of copyrights gain exclusive rights upon the work's creation, including rights to reproduce, distribute, display, and perform. *See id.* at 300-01.  "To state a claim for copyright infringement, the complaint must allege 1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright."  *Hongmian Gong v. Lerone Savage*, No. 23-CV-7355, 2024 WL 4696128, at *2 (S.D.N.Y. Nov. 4, 2024); *see Richards v. Warner Music Grp.*, No. 22-CV-6200, 2024 WL 4307994, at *3-4 (S.D.N.Y. Sept. 26, 2024); *Gordon v. Chambers*, No. 20-CV-696, 2024 WL 3533876, at *9 (E.D.N.Y. July 25, 2024).

Here, Plaintiff has only alleged registration of a single copyrighted work – Gangstarr "Life After Death" (U.S. Registration No. SR 713-381).  (TAC at 1; *see id.* ¶ 37.)  To the extent that Plaintiff alleges infringement claims for the unidentified and unregistered "common law copyrighted works," (TAC ¶ 39), those infringement claims are barred under the Copyright Act because Plaintiff has not alleged registration prior to commencing suit.  *See Fourth Estate*, 586 U.S. at 302 ("[O]utside of statutory exceptions not applicable here, § 411(a) bars a copyright owner from suing for infringement until registration has been made.");  *Gordon*, 2024 WL

3533876, at *9 (same); *McKenzie v. Big Apple Training Inc.*, No. 22-CV-9554, 2023 WL

4866041, at *10 (S.D.N.Y. July 31, 2023) (dismissing copyright infringement claim where

plaintiff admitted that she did not hold a registered copyright).

      "Legal ownership of the exclusive rights under a copyright initially vests in the author of

the copyrighted work," *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 410 (2d Cir. 2018),

and an "author may transfer all or a subset of these rights by any means of conveyance or

operation of law," *id.*  With respect to the Gangstarr "Life After Death" copyright, Plaintiff

alleges that he is the owner, based on the certificate of registration from the U.S. Copyright

Office that is referenced and incorporated in the TAC, (TAC ¶ 37; *see* ECF No. 29-6 at 1).  But

while that document states that Plaintiff and Guru are the authors of the work, it also states that 7

Grand Records is the claimant, having obtained the rights to the copyright "by written contract."

(*Id.*)  A copyright claimant is either the author or someone who obtained all rights under the

copyright from the author.  *See Johnson v. Giles*, No. 23-CV-2444, 2024 WL 4240446, at *14

(S.D.N.Y. Sept. 19, 2024); *Complex Sys., Inc. v. ABN Ambro Bank N.V.*, 979 F. Supp. 2d 456,

470 (S.D.N.Y. 2013).  As the attached certificate of registration states that 7 Grand Records is

the claimant, it must have obtained all rights under the copyright and it therefore may sue for

infringement as the legal owner.  *See Johnson*, 2024 WL 4240446, at *14 ("When an author (or

the sole owner) of a work transfers his entire ownership interest to another party, that includes

his interest in prosecuting causes of action for infringement of the work.").  The question

remains whether Plaintiff may also do so.

      "Under the Copyright Act, only 'the legal or beneficial owner of an exclusive right under

a copyright' has standing to sue for infringement."  *Harris v. Simon & Schuster, Inc.,* 646 F.

Supp. 2d 622, 632 (S.D.N.Y. 2009) (quoting 17 U.S.C. § 501(b)); *see John Wiley*, 882 F.3d at

402.  "A beneficial owner is the original author who transfers an exclusive copyright to another, but is entitled to receive royalties from that new owner for the exploitation of the author's work." *Wallert v. Atlan*, 141 F. Supp. 3d 258, 277-78 (S.D.N.Y. 2015).  Accordingly, Plaintiff could still possess the right to sue for infringement as a beneficial owner if he had a right to royalties or otherwise retained or obtained "an equitable interest in an exclusive right under [the] copyright." *John Wiley*, 882 F.3d at 415.  But Plaintiff has not pleaded any such thing, and provides no facts plausibly suggesting that he, as opposed to 7 Grand Records, is a party with the right to sue for infringement of the copyright in Gangstarr "Life After Death."  *See id.* at 414 (paradigmatic example of beneficial ownership is "an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees"); *AMO Development, LLC v. Alcon Vision, LLC*, No. 20-CV-842, 2023 WL 356161, at *3 (D. Del. Jan. 23, 2023) (to the same effect); *Roberts v. Gordy*, 359 F. Supp. 3d 1231, 1250 (S.D. Fla. 2019) (plaintiffs could not sue as beneficial owners where nothing in record showed that plaintiffs received or were entitled to receive royalties relating to derivative works of copyright); *Wallert*, 141 F. Supp. 3d at 278 (plaintiff could not sue for infringement as beneficial owner where FAC did not allege that he assigned copyright title in exchange for royalties).

Even if Plaintiff had plausibly pleaded that he has the right to sue for infringement of the copyright, he has failed to allege the second element of the claim:  that Defendants engaged in improper copying of the work.  "In a copyright infringement case, a plaintiff must prove two elements:  (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 153 (2d Cir. 2024).  "'To satisfy the second element, a plaintiff must demonstrate that:  (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial

similarity exists between the defendant's work and the protectible elements of plaintiff's work.'" *White v. DistroKid*, No. 22-CV-2205, 2024 WL 3195471, at *3 (S.D.N.Y. June 24, 2024) (quoting *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020)).  "Copying" refers to infringement of an owner's exclusive rights described in 17 U.S.C. § 106.  *See id.*

As with the trademark claims, the TAC provides no information about the alleged infringement and merely parrots the statutory rights set forth in 17 U.S.C. § 106.  It does not provide facts as to what acts might constitute infringement, which Defendant(s) committed them, or when.  Plaintiff's conclusory allegations of unspecified purported copying are not sufficient to support his copyright infringement claim.  *See Tianhai Lace Co. v. ASOS, PLC*, No. 22-CV-9752, 2023 WL 3479804, at *2 (S.D.N.Y. May 16, 2023) ("[A] complaint in copyright infringement actions must do more than simply rest on bare-bones allegations that infringement occurred."); *New London Assocs., LLC v. Kinetic Social LLC*, 384 F. Supp. 3d 392, 409 (S.D.N.Y. 2019) ("Beyond conclusory assertions, nothing in the SAC describes any act or acts taken by any of the Financing Entities that could plausibly be understood to constitute direct infringement."); *see also Richards*, 2024 WL 4307994, at *5 (dismissing vicarious copyright infringement claim where complaint set forth only conclusory statements).[10]  While the TAC "does not need detailed factual allegations," it must "give the defendant[s] fair notice of what the claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555; *see Phillies v. Harrison/Erickson*, No. 19-CV-7239, 2021 WL 5936523, at *42 (S.D.N.Y. Aug. 10, 2021).  Plaintiff has not done so here.  Accordingly, Plaintiff's claims of copyright infringement are dismissed.

---

[10] In his opposition, Plaintiff simply cites 17 U.S.C. § 501(a) and repeats conclusory assertions that the TAC details the copyrighted works and the manner of infringement, without reference to any facts that might render those conclusions plausible.  (*See* P's Opp. at 10.)

### 3.    Declaratory Judgement

Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (the "DJA"), a court "may

declare the rights and other legal relations of any interested party seeking such declaration" in "a

case of actual controversy."  28 U.S.C. § 2201(a).  Declaratory relief "is intended to settle legal

rights and remove uncertainty and insecurity from legal relationships without awaiting a

violation of the rights or a disturbance of the relationships."  *Nat'l Union Fire Ins. Co. of*

*Pittsburgh v. Int'l Wire Group, Inc.*, No. 02-CV-10338, 2003 WL 21277114, at *4 (S.D.N.Y.

June 2, 2003).  There must be a "substantial controversy, between parties having adverse legal

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment,"

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F.Supp.2d 293, 295 (S.D.N.Y. 2003),

and the DJA's phrase "case of actual controversy" refers to the same "cases" and "controversies"

governed by Article III's justiciability requirements, *see Admiral Ins. Co. v. Niagara*

*Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023).  "Thus, the DJA does not *expand* the subject-

matter jurisdiction of the federal courts; rather, the relevant inquiry for the DJA's case-of-actual-

controversy prerequisite is *coextensive* with the analysis applicable to the 'case-or-controversy'

standard embodied in Article III."  *Admiral Ins. Co.*, 57 F.4th at 92 (emphasis in original).  The

"critical question is whether there is a substantial controversy, between parties having adverse

legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment," and to answer this question "courts should focus on the practical likelihood that the

relevant contingencies will occur," *id*; *see Videri*, 2024 WL 4027980, at *18 (to the same effect).

In short, "the Declaratory Judgment Act does not by itself confer subject matter

jurisdiction on the federal courts" and "there must be an independent basis of jurisdiction before

a district court may issue a declaratory judgment."  *Call-A-Head Corp. v. United States*, No. 21-

CV-3234, 2022 WL 263164, at *2 (E.D.N.Y. Jan. 27, 2022); *see Bank v. Wolfe*, No. 19-CV-441,

2020 WL 4748320, at *4 (E.D.N.Y. Aug. 17, 2020) ("[T]he Declaratory Judgment Act is not an independent source of federal jurisdiction."); *Sikorsky Aircraft Corp. v. Lloyds TSB General Leasing (No. 20) Ltd.*, 774 F. Supp. 2d 431, 437 (D. Conn. 2011) ("To obtain relief under the DJA, a plaintiff must show that the underlying case falls within the subject matter jurisdiction of the district court.").  Having dismissed Plaintiff's federal claims – the only claims over which the Court has original jurisdiction[11] – there is no case of actual controversy before this Court.  *See Norton v. Town of Islip*, 678 F. App'x 17, 22 (2d Cir. 2017) (summary order) (where no federal claims survived pleading stage, District Court lacked subject matter jurisdiction to hear claims for declaratory relief and properly dismissed them); *Porat v. Lincoln Towers Cmty. Ass'n,* 2005 WL 646093, at *7 (S.D.N.Y. Mar. 21, 2005) (where all federal claims dismissed and no other basis for federal jurisdiction, declaratory judgment claim also dismissed).

Accordingly, the Court dismisses Plaintiff's claim for a declaratory judgment.

## C.    Defendant Martin

The TAC names Christopher Martin as a defendant.  (*See generally* TAC.)  As of the date of this opinion, no summons for Martin has been requested or issued and the time to serve him

---

[11] The TAC alleges that Court also has diversity jurisdiction over this matter, (TAC ¶ 2), but it fails to sufficiently allege complete diversity between the parties.  The TAC does not allege the citizenship of any of the parties but only where Plaintiff and two of the Defendants "reside," (*id.* ¶¶ 4-7), which is not sufficient, *see Kiss v. Kenny*, No. 22-CV-10663, 2024 WL 476388, at *3-4 (S.D.N.Y. Feb. 7, 2024).  Not only does the TAC not allege the domicile or citizenship of any party, but it also does not even say anything about the residence of Keith Elam, Christopher Martin or the Estate.  As to Martin, it says only that he has a studio in New York, (TAC ¶ 7), which if relevant to diversity would suggest it does not exist, as Plaintiff resides in New York, (*id.* ¶ 4).  The Estate by statute has the citizenship of the decedent, *see* 28 U.S.C. § 1332(c)(2), which also suggests that complete diversity would be lacking, given that Plaintiff's litigation with the Estate took place in Rockland County.  Keith Elam's location is unmentioned.

has run.[12]  *See* note 1 above.  Because the Court has "already found that Plaintiff cannot assert a

viable [trademark or copyright] claim [against Defendants] and that finding would apply equally

to a claim against [Martin] . . . it is appropriate for the Court to dismiss [those] claims as to

[Martin] *sua sponte*."  *Brown v. Womack*, No. 16-CV-31, 2019 WL 4689166, at *7 (W.D.N.Y.

Sept. 26, 2019) (collecting cases); *see McLennon v. N.Y. City*, No. 13-CV-128, 2015 WL

1475819, at *3 n.9 (E.D.N.Y. Mar. 31, 2015) ("As the court's rulings herein would apply equally

to the non-moving defendants in this case, the court dismisses plaintiff['s] . . . claims for failure

to state a claim as to the non-moving and unserved defendant[] *sua sponte.*"); *Salvani v. ADVFN*

*PLC*, 50 F. Supp. 3d 459, 463 n.2 (S.D.N.Y. 2014) (treating motion to dismiss as if brought on

behalf of all defendants because "Plaintiffs' claims against [unserved] defendants suffer[ed] from

the same deficiencies" as the served defendants), *aff'd sub nom. Salvani v. InvestorsHub.com,*

*Inc.*, 628 F. App'x 784 (2d Cir. 2015) (summary order).  Thus, the federal claims are dismissed

as to Defendant Martin.

### D.    State Law Claims

Plaintiff also asserts New York state law claims for unfair competition and conversion.

(*See* TAC ¶¶ 57-61.)  "[T]he traditional 'values of judicial economy, convenience, fairness, and

comity'" weigh in favor of declining to exercise supplemental jurisdiction over any remaining

state-law claims where all federal-law claims are eliminated before trial.  *Kolari v. N.Y.-*

*Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*,

484 U.S. 343, 350 (1988)).  Having determined that the only claims over which this Court has

original jurisdiction should be dismissed, and having considered the factors set forth in *Cohill*, I

---

[12] The affidavit of service attached to the TAC states that the TAC was served on Defendants' counsel, Kristin Grant.  (*See* ECF No. 49-1.)  But Defendants' counsel does not represent Martin in this action.

decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, which are dismissed without prejudice.

### E.    <u>Leave to Amend</u>

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended his complaint three times, with two different lawyers, including after having the benefit of Defendants' pre-motion letter outlining the grounds on which Defendants planned to move to dismiss, (ECF No. 23); the discussions at the August 29, 2023 pre-motion conference, (*see* Minute Entry dated Aug. 29, 2023), and the subsequent January 17, 2024 status conference, (*see* Minute Entry dated Jan. 17, 2024); and Defendants' earlier motion to dismiss, (ECF Nos. 30-31).  In general, amending a complaint three times is more than sufficient to satisfy Rule 15.  *See Metzler Investment Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 147 (2d Cir. 2020) (district court did not err in denying plaintiffs' request for leave to file a fourth amended complaint because "four bites at the apple is more than enough"); *Johnson v. City of N.Y.*, No. 24-CV-3018, 2024 WL 3520445, at *8 (S.D.N.Y. July 23, 2024) (declining to grant leave to amend *sua sponte* where plaintiff already amended three times); *see also Gargano v. Univ. of Vt. Med. Ctr.*, No. 23-CV-13, 2024 WL 1724591, at *4 (D. Vt. April 10, 2024) (declining to grant leave to amend *sua sponte* where plaintiff already had two opportunities to amend and defendant responded twice).

Moreover, Plaintiff has not asked to amend again or otherwise suggested that he is in possession of facts that would cure the deficiencies identified in this ruling. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure pleading deficiencies in complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Olsen v. Sherry Netherland, Inc.*, No. 20-CV-103, 2022 WL 4592999, at *15 (S.D.N.Y. Sept. 30, 2022) (denying leave to amend where plaintiff did not "explain how any amendment would cure the deficiencies identified by the Court"); *Schwasnick v. Fields*, No. 08-CV-4759, 2010 WL 2679935, at *11 (E.D.N.Y. June 30, 2010) (leave to amend properly denied where plaintiff does not submit proposed amended complaint).

Accordingly, the Court declines to grant Plaintiff leave to amend *sua sponte*. *See Bruno v. Metro. Transp. Auth.*, 344 F. App'x 634, 636 (2d Cir. 2009) (district court not required to *sua sponte* grant leave to amend); *In re Am. Exp. Co. S'holder Litig.*, 39 F.3d 395, 402 (2d Cir. 1994) (no abuse of discretion in not *sua sponte* granting leave to replead).

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff's claims for trademark infringement and false designation of origin, copyright infringement, and declaratory judgment are dismissed with prejudice. Plaintiff's state law claims for unfair competition and conversion are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 50), and close the case.

**SO ORDERED.**

Dated:  December 2, 2024
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.